# EXHIBIT 2



# OFFICE OF THE GOVERNOR

May 19, 2005

_Via Facsimile and U.S. Mail_   WA-354L

Mr. John Batie, C-34674
_Correctional Training Facility, North_
WA – 354L
Post Office Box 686
Soledad, California 93960

Dear Mr. Batie:

Penal Code section 3041.2 authorizes the Governor to review parole decisions of the Board of Prison Terms (Board) concerning persons sentenced to an indeterminate term upon conviction of murder.

After considering the same factors considered by the Board, the Governor has invoked his authority to <u>reverse</u> the Board's decision to grant parole in your case. The Governor's statement of the reasons for his decision is attached.

A copy of this letter is being provided to you via facsimile, and the signed original (along with a statement of the reasons for his decision) is being sent by mail. Additionally, we are transmitting a copy of this letter and the attached decision to the Chairperson of the Board of Prison Terms.

Sincerely,

PETER SIGGINS
Legal Affairs Secretary

Attachment

cc: Ms. Margarita Perez, Chairperson, Board of Prison Terms (w/attachment)

GOVERNOR ARNOLD SCHWARZENEGGER • SACRAMENTO, CALIFORNIA 95814 • (916) 445-2841

# INDETERMINATE SENTENCE PAROLE RELEASE REVIEW
(Penal Code Section 3041.2)

JOHN BATIE, C-34674
SECOND-DEGREE MURDER

AFFIRM:                          _____

MODIFY:                          _____

REVERSE:                         _____X_____

On the evening of February 13, 1981, John Batie and a friend argued with 30-year-old James Simmons and his companion in a parking lot. The argument escalated into a physical fight during which Mr. Batie and Mr. Simmons threw beer bottles at each other; Mr. Batie left the area, returned a short time later carrying a tire iron, and then left again. Several minutes later, Mr. Batie returned with a gun hidden under his clothing and said, "All right, come out, James. I'm ready to fight now." Mr. Simmons stood up from where he was sitting, and Mr. Batie, from a distance of 15 to 25 feet away, pulled out the gun and fired twice at Mr. Simmons before fleeing on foot. Mr. Simmons was hit in the thigh and back, and died from his injuries at a local hospital.

A few hours later, Mr. Batie was arrested for Mr. Simmons' murder. When he was searched, a hypodermic syringe was found in his sock, and he tested positive for cocaine and alcohol. Following a jury trial, Mr. Batie was convicted of second-degree murder with the use of a firearm, and sentenced to 17 years to life in prison. The judgment was affirmed on appeal.

Mr. Batie was 25 years old when he murdered Mr. Simmons and already had an extensive criminal history, including assaultive conduct as a juvenile. According to the probation officer's report, at age 13, Mr. Batie was adjudicated for battery for beating a younger, retarded boy and was made a ward of the court. A year later, Mr. Batie committed battery again and was ordered by the court on home placement. His other juvenile adjudications included theft, joyriding, and two counts of burglary, for which he received multiple terms of work project and juvenile probation camp. Furthermore, as an adult, Mr. Batie was convicted of both attempted burglary and burglary, and for each offense was sentenced to jail. According to the probation officer's report, he also was convicted of receiving stolen property and buying/selling items with the identification removed, petty theft, and disturbing the peace. Mr. Batie was on probation for his burglary conviction at the time he committed the life offense. And, according to the probation officer's report, he failed to appear at a sentencing hearing for another burglary conviction, as well as a revocation hearing, the very day he murdered Mr. Simmons. Mr. Batie's criminal history is significant—especially his history of violence against others as a juvenile—and to me, weighs heavily against his suitability for parole.

John Batie, C-34674
Second-Degree Murder
Page 2

Once incarcerated, Mr. Batie's conduct did not immediately improve. During his first 13 years
in prison, he was disciplined six times for violating prison rules, including incidents where he hit
another inmate in class, was found in possession of instructions for manufacturing PCP, called a
correctional officer an obscene name, was out of bounds twice, and refused to lock-up. While
incarcerated, he has also been counseled 12 times for minor misconduct. To his credit, however,
Mr. Batie has demonstrated an increased maturity by remaining discipline-free since 1994 and by
working to improve his likelihood of success upon parole. He has earned a High School
Equivalency, received vocational training in machine shop and small engine repair, and worked
at a variety of skilled institutional jobs. He has participated in self-help and therapy, including
Narcotics Anonymous, Alcoholics Anonymous, Substance Abuse Therapy Group, Addictions
Group, a father and anger management course, and individual therapy, and has been active in
extracurricular activities, including Arts in Corrections.

Moreover, Mr. Batie has maintained supportive relationships with friends and family, and has
made plans to live with his mother in his last county of residence. But Mr. Batie does not have a
confirmed employment offer at this time. While I recognize that he possesses marketable skills
and has contacted a job services agency to which he could potentially apply for assistance once
released, it nonetheless is critical that he has a legitimate plan to support himself financially
immediately upon release, especially given the fact that his criminal history includes convictions
for theft and burglary. Given Mr. Batie's background, he must have some concrete employment
arrangements prior to release and at the present time he has none.

Mr. Batie told the 2004 Board that he accepts full responsibility for murdering Mr. Simmons and
has remorse for what happened. But at the same hearing, he also told the Board he had no intent
to kill Mr. Simmons. He claimed that he had only planned to use the gun to scare Mr. Simmons'
companion into returning a couple of dollars that he allegedly took from Mr. Batie. He further
claimed that Mr. Simmons came toward him armed with a knife, ignored a warning to halt, and
then grabbed him, at which point Mr. Batie panicked and fired the gun. Despite Mr. Batie's
numerous assurances to the 2004 Board that his version of what happened is true, I cannot ignore
the appellate decision or the multiple eye-witnesses to the murder. According to the Court of
Appeal, Mr. Simmons was unarmed, had made no movement toward Mr. Batie, and was
standing 15 to 25 feet away when he was shot to death. And according to police reports, two
witnesses stated that they had seen Mr. Batie walk up to Mr. Simmons, make a comment, pull
out a gun from under his clothing, point the weapon at Mr. Simmons, and fire. I agree with the
representative of the San Diego County District Attorney's Office who, when opposing
Mr. Batie's parole at the 2004 hearing, described Mr. Batie's version of the murder as self-
defense as "preposterous." Mr. Batie's version of events to the 2004 Board regarding this
murder—his guilt for which is uncontested—demonstrates that he not only minimizes his
culpability for this murder but even places blame on his victim. Given the record before me, I
believe the Board erred when concluding that Mr. Batie "understand[s] the nature and the
magnitude of the offense and accepts responsibility for his criminal behavior."

John Batie, C-34674
Second-Degree Murder
Page 3

Not only is there no evidence to corroborate Mr. Batie's version of the murder as self-defense, there is considerable evidence that Mr. Batie premeditated on some level to kill Mr. Simmons—making his actions more than the minimum necessary for his second-degree murder conviction. Several minutes passed from the time Mr. Batie first argued and fought with Mr. Simmons to the time he fired his gun into the victim. Clearly, he had time to collect his thoughts, cool off, and simply walk away. Instead, during those several minutes, Mr. Batie left the scene twice only to return both times with weapons. The first time he returned with a tire iron. Per the probation officer's report, he then left stating that he would get Mr. Simmons and that he better not be there when he got back. Mr. Batie then retrieved an even more deadly weapon - a firearm – and returned to the parking lot where he sought out Mr. Simmons and shot him twice, killing him.

Mr. Batie committed a calculated and premeditated murder. The judge at Mr. Batie's sentencing even commented on the jury's verdict of second-degree murder by stating, "[N]ot only is [murder in] the 2nd degree clear, I think in my mind the 1st degree was very clear … ." The gravity alone of this heinous murder is a sufficient basis for me to conclude that Mr. Batie poses an unreasonable risk to public safety. And I note that both the San Diego County District Attorney's Office and the San Diego Police Department voiced opposition to Mr. Batie's parole in 2004 based, among other factors, on the gravity of the murder he committed.

Mr. Batie has been incarcerated 24 years now, during which time he has remained discipline-free for the past 11 years and has made some creditable gains. But after carefully considering the very same factors the Board must consider, I find the gravity of the second-degree murder committed by Mr. Batie, the insufficient insight he has demonstrated regarding the murder, and his criminal history of violence as a juvenile, presently outweigh any positive factors tending to support his parole. Accordingly, because I believe his release from prison would pose an unreasonable risk of danger to society at this time, I REVERSE the Board of Prison Terms' 2004 decision to grant parole to Mr. Batie.

Decision Date: 5/2/05

ARNOLD SCHWARZENEGGER
Governor, State of California