# EXHIBIT 3

1  Michael J. Brennan (State Bar No. 40436)
2  Carrie L. Hempel (State Bar No. 126713)
   Post-Conviction Justice Project
3  University of Southern California Law School
   Los Angeles, California 90089-0071
4  Telephone: (213) 740-2586; 740-9322

F I L E D

Clerk of the Superior Court

MAY 1 7 2006

By: _____AT_____ Deputy

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN DIEGO

WRIT GRANTED/DENIED
DATE_____

In re                                )
                                     )
    JOHN LEE BATIE                   )
                                     )   Case No. HC 16046
                                     )            CR 53556
                                     )
On Habeas Corpus                     )   (Original Super. Ct. No. CR 53556; Ct. of
                                     )   Appeal 4 Crim. No. 13522)
_____)


PETITION FOR WRIT OF HABEAS CORPUS AND

SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES;

EXHIBITS

# TABLE OF AUTHORITIES

STATE CASES

Gray v. Whitmore, 17 Cal. App. 3d 1, 94 Cal. Rptr. 904 (1971) . . . . . . . . . . . . . . . . . . . . . . . . 10

In re Arafiles, 6 Cal. App. 4th 1467, 8 Cal. Rptr. 2d 492, (1992) . . . . . . . . . . . . . . . . . . . . . . 11

In re Capistran, 107 Cal. App. 4th 1299, 132 Cal. Rptr. 2d 872 (2003) . . . . . . . . . 11, 16, 17, 23

In re Minnis, 7 Cal. 3d 639 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

In re Powell, 45 Cal. 3d 894, 755 P.2d 881, 248 Cal. Rptr. 431 (1988) . . . . . . . . . . . . . . . . . . 11

In re Ramirez, 94 Cal. App. 4th 549, 114 Cal. Rptr. 2d 381 (2001) . . . . . . . . . . . . . . . . . passim

In re Rosenkrantz, 29 Cal. 4th 616, 59 P.3d 174, 128 Cal. Rptr. 2d 104 (2002) . . . . . . . . passim

In re Smith, 114 Cal. App. 4th 343, 134 Cal. Rptr. 2d 781 (2003) . . . . . . . . . . . . . . . . . . . 10, 22

FEDERAL CASES

Armstrong v. Davis, 275 F.3d 849 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Bd. of Pardons v. Allen, 482 U.S. 369 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Benny v. U.S. Parole Comm'n, 295 F.3d 977 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 22

Biggs v. Terhune, 334 F.3d 910 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 20

Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1 (1979) . . . . . . . . 21, 22

Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . 22

McQuillion v. Duncan, 306 F.3d 895 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Wallace v. Christensen, 802 F.2d 1539 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

STATUTES

Cal. Code Regs., Tit. 15, § 2402(c) (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Cal. Penal Code § 3041(b) (West 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Cal. Penal Code § 3041.2 (West 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CONSTITUTIONS

Cal. Const. Art. V, § 8(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## LIST OF EXHIBITS

Document (Dated May 6, 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A

Document (Dated May 11, 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . B

2003 Board Report (same as E) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C

Probation Officer's Report (same as T) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . D

2001 Board Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . E

1990 Parole Hearing Transcript . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . F

Life Prisoner Hearing-Extraordinary Action and Decision Form 12-3-90 . . . . . . . . . . . . . . . G

1992 Parole Hearing Transcript . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . H

1994 Parole Hearing Transcript . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I

Life Prisoner Hearing-Extraordinary Action and Decision Form 3-23-95 . . . . . . . . . . . . . . . J

1996 Parole Hearing Transcript . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . K

1998 Parole Hearing Transcript . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L

Miscellaneous Decisions Form 12-14-00 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . M

2001 Parole Hearing Transcript . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . N

Indeterminate Sentence Parole Release Review 5-06-03 . . . . . . . . . . . . . . . . . . . . . . . . . O

2002 Parole Hearing Transcript . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . P

2001 Psychological Evaluation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Q

PIA Optical Lab Letter 1-7-92 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . R

San Diego Workforce Partnership Letter 3-26-02 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . S

2004 Parole Hearing Transcript . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . T

Indeterminate Sentence Parole Release Review 5-19-05 . . . . . . . . . . . . . . . . . . . . . . . . . U

## INTRODUCTION

1. John Lee Batie has served more than 22 years in prison for killing a man during a heated altercation. While incarcerated, Mr. Batie has diligently made efforts towards self-improvement, from participating in numerous self-help programs to completing his general education development ("GED"). These achievements, among others, played a role in a Board of Prison Terms ("BPT") panel finding Mr. Batie suitable for parole on both December 6, 2002 and December 21, 2004.

2. Mr. Batie's finding of suitability has been reversed by the sitting governor, Governor Schwarzenegger on May 19, 2005. This decision is without supporting evidence. As a result, the Governor has violated Mr. Batie's due process rights under the California and United States Constitutions. This petition seeks to redress these violations of Mr. Batie's constitutional rights, so that he may be released from custody and allowed to live with his mother in San Diego, who has already stated her willingness to accept him on parole.

## PARTIES

3. Petitioner, John Lee Batie, C-34674, is a prisoner of the State of California, unlawfully confined at Correctional Training Facility ("CTF") in Soledad, California. He is incarcerated at CTF as a result of his conviction in San Diego County Superior Court for second degree murder.

4. Respondent Jeanne S. Woodford is the Director of the California Department of Corrections, who is responsible for Mr. Batie's unlawful incarceration at CTF.

5. Respondent Anthony Kane is the Acting Warden of CTF, who is responsible for Mr. Batie's unlawful incarceration at CTF.

6. Respondent Arnold Schwarzenegger is the current Governor of the State of California, and is now responsible for reviewing parole decisions of the BPT. The Governor personally reversed the December 21, 2004 decision of the BPT to grant Mr. Batie parole, and as a result of that decision his imprisonment continues unlawfully.

/ / /

/ / /

/ / /

## STATEMENT OF THE CASE

7. Petitioner is unlawfully incarcerated by his custodian, the California Department of Corrections, pursuant to a judgment of conviction in People v. Batie, San Diego Superior Court Case No. CR-53556. On July 9, 1981, a jury found Mr. Batie guilty of second degree murder, a violation of section 187 of the California Penal Code ("CPC"), with personal use of a firearm, a violation of section 12022.5 of the CPC. The Court of Appeal affirmed the judgment of the Superior Court of San Diego on July 30, 1982.

8. Mr. Batie began serving his term on August 19, 1981. Over the course of his incarceration, Mr. Batie received various documents from the BPT which have listed his minimum eligible parole date ("MEPD") as early as March 14, 1990 (document dated May 6, 1985) and as late as January 14, 1993 (document dated May 11, 1982). (See Ex. A-B.)

9. Mr. Batie's Initial Parole Consideration Hearing was on March 7, 1990. At that hearing, a BPT panel found him unsuitable for parole and denied another hearing for one year. In each of his five following Subsequent Parole Consideration Hearings, he was found unsuitable.

10. On December 6, 2002, the BPT panel found Mr. Batie suitable for parole. The BPT Decision Review Committee approved the panel's recommended decision. Former Governor Davis reversed this suitability decision on May 5, 2003.

11. On October 28, 2004, a petition for the writ of habeas corpus was filed in this court to challenge former Governor Davis's reversal of Mr. Batie's suitability finding.

12. On December 20, 2004, Judge Albert T. Harutunian III issued an order denying the petition for the writ of habeas corpus that was filed to challenge former Governor Davis's reversal of Mr. Batie's suitability finding.

13. On December 21, 2004, the BPT panel found Mr. Batie suitable for parole for the second time. Again, the BPT Decision Review Committee approved the panel's recommendation. Governor Schwarzenegger reversed Mr. Batie's second suitability finding on May 19, 2005.

14. Governor Schwarzenegger's decision cannot be sustained because there is not

1   evidence in the record to support his opinion that Mr. Batie poses a danger to society.

2          15.  No administrative remedies are available to challenge Governor

3   Schwarzenegger's decision.

4          16.  This petition for writ of habeas corpus is properly filed with this court since it

5   was the trial and sentencing court for Batie.

6          17.  The accompanying memorandum of points and authorities and exhibits are

7   made part of this petition by reference.

## STATEMENT OF FACTS

## I.    PRE-CONVICTION HISTORY

10          18.  Mr. Batie was born and raised in San Diego.  (Ex. C at 3.)  He is the second

11  youngest of five children.  (Id.)  His parents separated when he was very young and his father

12  died when he was 12 years of age.  (Id.)  Although he never graduated from high school, he

13  found work as a machinist and carpet layer.  (Id.)  He married in 1976 and had one daughter.

14  (Id.)  The marriage lasted about 5 years before the couple separated and eventually divorced in

15  1986.  (Id.)

16          19.  Mr. Batie had a minor juvenile record; however, he was never committed to

17  California Youth Authority ("CYA").  (Ex. C at 2; see also Ex. D at 5.)

18          20.  Although Mr. Batie had a criminal record prior to the instant offense, he had

19  never been convicted of a violent crime.  As an adult, Mr. Batie was sentenced to four months in

20  county jail in 1973 for attempted burglary of a pharmacy.  (Id.)  In 1974, he stole a bicycle and

21  received a three year suspended sentence and a $50 fine.  (Ex. C at 3; see also Ex. D at 6.)  In

22  1975, he was placed on one year formal probation for petty theft / shoplifting of a package of

23  hamburger meat.  (Ex. D at 6.)  In 1977, he received a three year suspended sentence and a $75

24  fine for disturbing the peace.  (Id.)  In 1978, he spent four months in custody and received a three

25  year suspended sentence for 2nd degree burglary, which consisted of stealing a cash box

26  containing approximately $215 from his employer's business.  (Ex. C at 3; see also Ex. D at 6.)

27  In 1980, he was cited for urinating in public.  (Ex. D at 6.)  In 1981, he committed a burglary at a

28  local junior high school.  (Ex. C at 3; see also Ex. D at 6.)  He was scheduled for sentencing for

this burglary on February 13, 1981, but he failed to appear.  (Ex. D at 6.)  He was arrested later

1  that night for the instant offense.  (Id.)

2  　　　　　21.  On February 13, 1981, Mr. Batie had a heated altercation with James H.

3  Simmons in front of the Ideal Liquor Store ("Store").  (Ex. P at 10; see also Ex. E at 1.)  Both

4  Mr. Batie and Mr. Simmons threw beer bottles at each other.  (Ex. E at 11.)  One of the bottles

5  thrown by Mr. Simmons hit Mr. Batie on the side of his head.  (Id.)  This prompted Mr. Batie to

6  go behind the store, where he found a tire iron, and come back to the front of the store.  (Id. at 12;

7  see also Ex. E at 1.)  The men had a stand off which resulted in Mr. Batie leaving and returning

8  with a gun.  (Ex. P at 12; see also Ex. E at 1.)  Mr. Batie's sole intention was to scare Mr.

9  Simmons into giving Mr. Batie some money he was owed.  (Ex. E at 14.)  However, another

10  argument ensued and Mr. Batie fatally shot Mr. Simmons.  (Ex. E at 1.)

## II.    PROCEDURAL HISTORY

12  　　　　　22.  On March 25, 1981, Mr. Batie was charged with murder, with the use of a

13  firearm, for fatally shooting Mr. Simmons.

14  　　　　　23.  On July 9, 1981, Mr. Batie was convicted by a jury of second degree murder

15  with the use of a firearm.

16  　　　　　24.  On July 30, 1982, the Court of Appeal affirmed the judgment of the Superior

17  Court of San Diego.

## III.   HISTORY OF APPEARANCES BEFORE THE BPT PRIOR TO DECEMBER 6, 2002

19  　　　　　25.  Mr. Batie's Initial Parole Consideration Hearing was on March 7, 1990.  At

20  that hearing, a BPT panel found him unsuitable for parole and denied another hearing for one

21  year.  (See Ex. F.)  The BPT panel recommended that Mr. Batie remain disciplinary free, upgrade

22  vocationally and/or educationally, and participate in self-help or therapy programming.  (Id. at 7.)

23  　　　　　26.  In December 1990, Mr. Batie requested a one year postponement because he

24  was not able to fulfill the March 1990 BPT panel's recommendation for self-help or therapy

25  programming.  (See Ex. G.)

26  　　　　　27.  Mr. Batie appeared before the BPT for his second hearing on January 15,

27  1992.  He was found unsuitable for parole and denied another hearing for two years.  (See Ex.

28  H.)  Again, the BPT panel recommended that Mr. Batie remain disciplinary free, upgrade

1    vocationally and/or educationally, and participate in self-help or therapy programming. (Id. at 6.)

2         28. At Mr. Batie's February 2, 1994 Subsequent Parole Consideration Hearing,

3    the BPT panel found him unsuitable for parole and denied another hearing for one year. (See Ex.

4    I.) The BPT panel noted he had made positive adjustments, such as remaining disciplinary free

5    for seven years, participating in vocational training, and participating in self-help and therapy

6    programming. (Id. at 78.) They recommended that he remain disciplinary free, complete his

7    vocational training, and continue in self-help and therapy programming. (Id.)

8         29. Mr. Batie requested a one year postponement of his June 22, 1995

9    Subsequent Parole Consideration Hearing due to the fact that he wanted to complete his

10   vocational training as recommended by the February 1994 BPT panel. (See Ex. J.)

11        30. At Mr. Batie's August 22, 1996 Subsequent Parole Consideration Hearing,

12   the BPT panel found him unsuitable for parole and denied another hearing for two years. (See

13   Ex. K.) The BPT panel commended him for obtaining his GED and participating in self-help

14   programming. (Id. at 30.) The BPT panel recommended that Mr. Batie remain disciplinary free,

15   upgrade vocationally and educationally, and participate in self-help and therapy programming.

16   (Id. at 31.)

17        31. At Mr. Batie's September 17, 1998 hearing, the BPT panel found him

18   unsuitable for parole and denied another hearing for three years. (See Ex. L.) The BPT panel

19   commended him for his educational and work achievements. (Id. at 41.) The BPT panel

20   recommended that Mr. Batie remain disciplinary free, upgrade vocationally and educationally,

21   and participate in available self-help and therapy programming. (Id. at 42.)

22        32. Following the finding of unsuitability on September 17, 1998, Mr. Batie filed

23   a Writ of Habeas Corpus requesting that a re-hearing be granted due to the inappropriate

24   testimony of Ms. Ernestine Jensen. (See Ex. M at 1.) On November 8, 2000, the Monterey

25   County Superior Court ordered that Ms. Jensen's comments be stricken from the record, that Ms.

26   Jensen's comments not be considered in any future parole consideration hearings, and that the

27   prisoner's three year denial from the September 17, 1998 hearing be reconsidered in light of the

28   Superior Court's decision. (Id.)

         33. On December 14, 2000, a BPT panel reconsidered the length of denial for a

                                              5

Subsequent Parole Consideration Hearing and determined that the three year denial was appropriate. (Id. at 2.) The BPT panel reiterated the recommendations of the September 1998 BPT panel. (Id.)

34. At Mr. Batie's December 17, 2001 Subsequent Parole Consideration Hearing, the BPT panel found him unsuitable for parole and denied him another hearing for one year. (See Ex. N.) The BPT panel noted that Mr. Batie had a positive psychological evaluation, realistic residential plans, made a good faith effort to find employment, and remained disciplinary free for seven years. (Id. at 51-52.) The BPT panel recommended that Mr. Batie secure employment, remain disciplinary free, upgrade vocationally and educationally, and participate in available self-help programs. (Id.)

## VI.   MR. BATIE'S DECEMBER 21, 2004 HEARING

44. Mr. Batie went in front of a BPT panel for the eighth time on December 21, 2004. (See Ex. T.) The panel found Mr. Batie suitable for parole, as it determined that Mr. Batie is not a threat to society and does not pose a threat to public safety. (Id. at 83.)

45. The BPT panel found that Mr. Batie had realistic parole plans, emphasized his enhanced ability to function within the law, and applauded his accomplishments in his education and vocational training. (See id.) They placed great emphasis on his employability, mentioning his "excellent work reports," (Id.) and also noted that machine shop was an "excellent, excellent vocation" and that "small engines is an excellent skill." (Id. at 84.) Despite acknowledging that Mr. Batie did not have a job offer at the time of his hearing, the panel felt that "his skills are such that he should be able to find a job" and that his family's offer to support him would be sufficient until he found one with the assistance of the Community Connection program, which assists . (See id.)

46. The panel also relied upon Mr. Batie's positive institutional behavior and his acceptance of responsibility for his commitment offense in finding him suitable for parole. (Id. at 87.) The panel noted that it had appeared he had "come to terms with his disciplinary history" and that his "recently maintained positive institutional behavior […] indicates significant improvement in self-control." (Id.) The panel found that he showed signs of remorse and that he understands accepted responsibility for his criminal behavior, concluding that this suggests a

1  "desire to change towards good citizenship." (Id.)

2      47.  Additionally, the BPT panel consulted the August 12, 2004 psychological

3  evaluation conducted by Dr. Jeff Howlin in making their decision to find Mr. Batie suitable for

4  parole. (Id. at 87.) The panel noted that the psychological evaluation indicated that his level of

5  dangerousness was reduced in both structured and unstructured environments, should he remain

6  substance-free. (Id.) The panel interpreted this conclusion as one favoring release, since Mr.

7  Batie's parole plans included substance abuse treatment at the Community Connection. (See id.)

8      48.  The panel concluded the hearing by discussing Mr. Batie's term as derived

9  from the matrix under title 15, section 2402(c)(3) of the California Code of Regulations. (Id. at

10  89.) The panel assessed a total period of confinement of 172 months, or 14 years and 4 months.

11  (Id. at 90.) Mr. Batie has now served over 22 years.

12  **VII.    GOVERNOR SCHWARZENEGGER'S REVERSAL OF THE DECEMBER 2004 BPT DECISION.**

13      49.  Despite the record before him and the recommendation of the BPT, Governor

14  Schwarzenegger reversed the BPT's suitability finding for parole on May 2, 2005. (See Ex. U.)

15  Governor Schwarzenegger based his decision to reverse Mr. Batie's finding of suitability for

16  parole on reasoning that directly contradicts the facts and conclusions reached by the BPT panel

17  in their December 21, 2004 decision. The Governor concluded that Mr. Batie has a "history of

18  violence against others," inadequate parole plans, fails to accept responsibility for his

19  commitment offense, and that his commitment offense was particularly grave and heinous. (See

20  id.) Based on these conclusions, the Governor determined that Mr. Batie would pose an

21  "unreasonable risk to public safety." (Id. at 4.)

22      50.  Governor Schwarzenegger has exceeded his authority in failing to adequately

23  consider Mr. Batie's case as he is mandated to do under article V, section 8(b), of the California

24  Constitution and section 3041.2 of the California Penal Code. No evidence supports his reversal

25  of the BPT's finding of parole suitability, and thus, the law requires that Mr. Batie be released

26  from prison.

27  / / /

28  / / /

7

## CONTENTIONS

I.      Governor Schwarzenegger's decision to deny parole is arbitrary and capricious, and thus violates the due process clause of the California Constitution.

II.     Governor Schwarzenegger's decision to deny parole violates the due process clause of the United States Constitution.

## REQUEST FOR RELIEF

Mr. Batie is without a remedy save by writ of habeas corpus.

WHEREFORE, Mr. Batie prays that this Court:

1.      Issue an Order to Show Cause directing Respondent to file a Return within 30 days;

2.      Issue a Writ of Habeas Corpus directing that the Petitioner be released, or in the alternative, directing Governor Schwarzenegger to comply with the law and allow the Board of Prison Term's suitability decision to stand;

3.      Order Respondents to provide Mr. Batie with reasonable discovery;

4.      Conduct an evidentiary hearing, including an order directing the Department of Corrections to arrange for the presence of Petitioner at the hearing on this matter; and;

5.      Grant all other relief necessary to promote the ends of justice.


DATED: May 16, 2006                 Respectfully,

                                    MICHAEL J. BRENNAN
                                    CARRIE L. HEMPEL
                                    USC POST-CONVICTION JUSTICE PROJECT


                                    By:    _____
                                           MICHAEL J. BRENNAN
                                           Attorney for Petitioner
                                           JOHN LEE BATIE

On the Brief:
Thy Bui
Certified Law Student Intern

## VERIFICATION

I, Michael J. Brennan, declare as follows:

I am an attorney admitted to practice law in the State of California. I represent John Lee Batie, who is confined at the Correctional Training Facility located in Soledad, California.

I am authorized to file this petition for writ of habeas corpus on Mr. Batie's behalf. I make this verification because Mr. Batie is incarcerated in a county different from that of my law office. I have read the petition and know the contents to be true.

I certify under penalty of perjury that the foregoing is true and correct and that this declaration was executed on May 16, 2006, at Los Angeles, California.

MICHAEL J. BRENNAN

## MEMORANDUM OF POINTS AND AUTHORITIES

## IN SUPPORT OF THE PETITION


### INTRODUCTION

Mr. Batie challenges Governor Schwarzenegger's reversal decision in 2005. He raises a claim for habeas relief based on the reversal. First, Governor Schwarzenegger's reversal of the California Board of Prison Terms's decisions to grant Mr. Batie parole was arbitrary and capricious, in violation of Mr. Batie's rights under the Due Process clause of the California Constitution. Second, Governor Schwarzenegger's arbitrary and capricious application of the law violates the Due Process clause of the United States Constitution.

### ARGUMENT

I.    **MR. BATIE MUST BE RELEASED FROM CUSTODY BECAUSE GOVERNOR SCHWARZENEGGER'S DECISION TO DENY PAROLE WAS ARBITRARY AND CAPRICIOUS IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE CALIFORNIA CONSTITUTION.**

Article I, section 7(a) of the California Constitution states that every person shall be afforded due process of law. Due process is violated when life, liberty, or property is deprived through an arbitrary and capricious application of the law. Gray v. Whitmore, 17 Cal. App. 3d 1, 21, 94 Cal. Rptr. 904, 925 (1971). The California Supreme Court has recognized that parole applicants possess a "protected liberty interest" under the California due process clause. In re Rosenkrantz, 29 Cal. 4th 616, 59 P.3d 174, 128 Cal. Rptr. 2d 104 (2002); see also In re Ramirez, 94 Cal. App. 4th 549, 114 Cal. Rptr. 2d 381, 394 (2001), overruled in part by In re Dannenberg, 34 Cal. 4th 1061, 23 Cal. Rptr. 3d 417 (2005); In re Smith, 114 Cal. App. 4th 343, 134 Cal. Rptr. 2d 781 (2003). Decisions of the BPT, as well as the Governor's review of those decisions, must satisfy due process requirements. See Rosenkrantz, 29 Cal. 4th at 619.

Once the BPT has set a parole date, the Governor is authorized to reverse, modify or affirm the grant of parole for an individual convicted of murder within thirty (30) days of the BPT's final parole decision. Cal. Const. art. V, § 8(b)§§; Cal. Penal Code § 3041.2 (West 1988)§§. His review of a parole decision is limited to the administrative record and his decision must be based on the same criteria that the BPT considered in arriving at the parole decision. In re Arafiles, 6 Cal. App. 4th 1467, 1479, 8 Cal. Rptr. 2d 492, 513 (1992). The Governor must approve a release date unless he determines that the prisoner would be a danger to the public if released. Cal. Penal Code §3041(b) (West 2005) §§.

A court may review a governor's parole decision under a highly deferential standard of review, and must reverse the decision if it is "arbitrary and capricious," and thus violates "established principles of due process of law." Ramirez, 94 Cal. App. 4th at 563. A governor's decision to reverse a parole date that is not supported by some evidence is an arbitrary and capricious decision. See Rosenkrantz, 29 Cal. 4th at 626; see also In re Powell, 45 Cal. 3d 894, 904, 755 P.2d 881, 887, 248 Cal. Rptr. 431, 441 (1988).

A reversal may also be arbitrary and capricious, even if it is supported by some evidence, if the decision does not reflect an individualized consideration of all factors relevant to parole suitability. See In re Capistran, 107 Cal. App. 4th 1299, 1306, 132 Cal. Rptr. 2d 872, 879 (2003) (citing Rosenkrantz, 29 Cal. 4th at 682-83 (noting that "although the nature of an offense *may* constitute some evidence sufficient to justify the denial of parole, it can only be so if the decision reflects an individualized consideration of all other factors relevant to parole suitability.")).[1]

---

[1] Factors tending to show suitability, pursuant to title 15, section 2402 of the California Code of Regulations are: the prisoner (1) does not possess a record of violent crime while a juvenile; (2) has a stable social history; (3) has shown signs of remorse; (4) committed the crime as the result of significant stress in [her] life, especially if the stress has built over a long period of time; (5) committed the criminal offense as a result of battered women's syndrome; (6) lacks any significant history of violent crime; (7) is of an age that reduces the probability of recidivism; (8) has made realistic plans for release or has

Finally, continued reliance by the Governor on an unchanging factor such as the circumstances of the offense and/or conduct prior to imprisonment "runs contrary to the rehabilitative goals espoused by the prison system" and therefore, constitutes a due process violation. See Ramirez, 94 Cal. App. 4th at 571 (stating that the Board's "reliance on the nature of the commitment offenses to deny Ramirez parole for the seventh time, nine years after he first became eligible and 17 years after he entered prison, reflects a determination that was arbitrary in the sense that the Board failed to apply the controlling legal principle to the facts before it"); see also Biggs v. Terhune, 334 F.3d 910, 916 (9th Cir. 2003) (denying a prisoner parole who has, over a period of time, continued to demonstrate exemplary behavior and evidence of rehabilitation "simply because of the nature of [the prisoner's] offense and prior conduct would raise serious questions involving his liberty interest in parole").

In 2005, Governor Schwarzenegger's reversal of the BPT's suitability finding cited four bases for his conclusion that Mr. Batie would pose an unreasonable risk to society if released: (1) the gravity of the commitment offense, (2) his lack of acceptance of responsibility for his crime, (3) his prior criminal history, and (4) his lack of a confirmed employment offer upon release. (Ex. U.)

As discussed below, the former Governor's and the current Governor's reversals of Mr. Batie's grants of parole were arbitrary and capricious, and thus violated his right to due process because the decisions: (1) were based upon facts for which there was not "some evidence," (2) do not reflect an individualized consideration of all factors relevant to parole suitability, and (3) are primarily based on a continued reliance on two unchanging factors: (a) the circumstances of his commitment offense and (b) his conduct prior to imprisonment.

_____

developed marketable skills that can be put to use upon release; and (9) has engaged in institutional activities that indicate an enhanced ability to function within the law upon release.

1

2

**A.**   **Governor Schwarzenegger's Reversal Is Not Supported By**
**Any Evidence That Mr. Batie Poses An Unreasonable Risk To**
**Society.**

3

4

In reversing the BPT's finding of suitability for Mr. Batie, Governor Schwarzenegger

5

relied, in part, on the nature of his commitment offense.  He makes two erroneous determinations

6

about the nature of the commitment offense: (1) that "Mr. Batie's crime exhibited an

7

exceptionally callous disregard for human suffering;" and (2) that Mr. Batie's "motive is trivial

8

compared to the repeated attacks and violence."  These characterizations of the nature of the

9

10

commitment offense are not supported any evidence in the record.

11

i.    No Evidence Exists in the Record That Mr. Batie's
Crime Was Committed in an Especially Heinous,
Atrocious, or Cruel Manner.

12

13

Title 15, section 2402(c) of the California Code of Regulations sets forth six criteria to be

14

used by the BPT in evaluating whether circumstances exist in the prisoner's record that indicate

15

unsuitability for parole.  The first of those criteria, which concerns the circumstances of the

16

17

commitment offense, asks the BPT to evaluate whether the offense was committed in an

18

"especially heinous, atrocious, or cruel manner," and states several factors to be considered.  Cal.

19

Code Regs., tit. 15, § 2402(c) (2005)§§.  One of those factors is whether "the offense was carried

20

out in a manner which demonstrates an exceptionally callous disregard for human suffering."

21

22

Id.§  Another factor is whether "the motive for the crime is inexplicable or very trivial in relation

23

to the offense."  Id.§

24

The California Penal Code states that parole is "normally" to be granted once the MEPD

25

has been reached by the inmate.  § 3041(b) (West 2005)§.  However, the nature of the prisoner's

26

offense, alone, can constitute a sufficient basis for denying parole.  Rosenkrantz, 29 Cal. 4th at

27

682.  The California Supreme Court has found that this exception for denying parole must be

28

limited to cases in which the commitment offense is particularly egregious, as compared to other convictions of the same offense, in order to justify the denial of parole date. Id. at 683. As stated succinctly in Dannenberg, the Governor's finding that the circumstances of the commitment offense were "particularly egregious" may only be upheld when the "violence or viciousness of the inmate's crime [is] more than minimally necessary to convict him of the offense for which he is confined." 34 Cal. 4th at 1095 (citing Rosenkrantz, 29 Cal. 4th at 683). Additionally, the Rosenkrantz court also warned that the "authority to make an exception [to the requirement of setting a parole date] based on the gravity of a life term inmate's current or past offenses should not operate as to swallow the rule that parole is normally to be granted." Id. at 626 (quoting Ramirez, 94 Cal. App. 4th at 570). Therefore, "[i]n some circumstances a denial of parole based upon the commitment offense alone might rise to the level of a due process violation." Id.

In Rosenkrantz, the court upheld former Governor Davis's reversal of a finding of suitability on the basis of the nature of the commitment offense because it was particularly egregious, as compared to other convictions of the same offense. 29 Cal. 4th at 633. The inmate served 14 years for a second degree murder conviction in which there was substantial evidence that the inmate had premeditated the murder over the course of a week, evaded authorities for nearly a month after the crime, and made statements indicating a lack of remorse. Id. at 671. Evidence existed that the inmate had arranged to purchase an uzi semiautomatic three days before using it to kill his victim, waited outside the victim's house overnight, and then "fired 10 shots at close range [and] at least three or four shots into the victim's head as he lay on the pavement." Id. The former Governor's finding that the inmate "'brutally murdered' his victim after 'a full week of careful preparation, rehearsal, and execution'" was supported by the record and constituted "particularly egregious acts beyond the minimum necessary to sustain a

14

conviction for second degree murder." Id. at 683. In addition, the former Governor determined

that the inmate's conduct before he surrendered to authorities was evidence of the seriousness of

the commitment offense. Id. at 673. He was a fugitive for 24 days, during which time he made

several statements to different people indicating a complete lack of remorse for the crime. See

id. at 674. For example, he contacted a nurse at a psychiatric hospital and "told her that he did

society a favor by shooting [the victim], and that [the inmate's] parents and family, along with

the victim, were the cause of [the inmate's] problems." Id.

In Dannenberg, the court upheld a BPT decision finding an inmate, who had served only

fourteen years for beating his wife to death with a pipe wrench, unsuitable for parole on the basis

of the egregious nature of his commitment offense. 34 Cal. 4th at 1095. As in Rosenkrantz, the

Dannenberg court upheld the Board's decision on the grounds that "the parole authority [had]

pointed to circumstance of the inmate's offense suggesting viciousness beyond the minimum

elements of second degree murder." Id. While the inmate's wife was bleeding profusely from

the injuries that he had inflicted upon her, she either fell or was pushed into a bathtub full of

water, where she drowned. Id. The Court agreed with the Board's finding that the evidence

clearly permitted the "inference that, while the victim was helpless from her injuries, [the inmate]

placed her head in the water, or at least left it there without assisting her until she was dead." Id.

In sum, the inmate's repeated use of a weapon to beat his wife and probable inference that he

then held her head under water to drown her were sufficient circumstances to support the Board's

finding that the commitment offense constituted "viciousness beyond the minimum elements" of

second degree murder. See id.

/ / /

/ / /

15

ii.    Governor Schwarzenegger's Decision Is Arbitrary
And Capricious Because the Decision Does Not
Reflect an Individualized Consideration of All
Factors Relevant to Parole Suitability.

"The absence of serious misconduct in prison and participation in institutional activities that indicate an enhanced ability to function within the law upon release are factors that the must be considered *on an individual basis* by the Governor in determining parole suitability." Rosenkrantz, 29 Cal. 4th at 682. "Even before factors relevant to parole decisions had been set forth expressly by statute and by regulation, [the California Supreme Court] concluded that '[a]ny official or board vested with discretion is under an obligation to consider *all* relevant factors [citation], and the [Governor] cannot, consistently with its obligation, ignore postconviction factors unless directed to do so by the Legislature.'" Id. at 655 (quoting In re Minnis, 7 Cal. 3d 639, 645 (1972) (italics in original). Some evidence alone is insufficient if the decision does not reflect an individualized consideration of all factors statutorily relevant to a parole determination. Capistran, 107 Cal. App. 4th at 1306.

Thus, when former Governor Schwarzenegger overlooked substantial portions of the record that would support a finding of suitability, he did so in violation of the law. Title 15, section 2402(d) of the California Code of Regulations states that circumstances tending to show suitability for parole are that the inmate: (1) does not possess a record of violent crime committed while a juvenile; (2) has a stable social history; (3) has shown signs of remorse; (4) committed the crime as the result of significant stress in his life, especially if the stress built over a long period of time; (5) committed the criminal offense as a result of battered woman syndrome; (6) lacks any significant history of violent crime; (7) is of an age that reduces the probability of recidivism; (8) has made realistic plans for release or has developed marketable skills that can be put to use upon release; and (9) has engaged in institutional activities that indicate an enhanced

16

1    ability to function within the law upon release.

2        In Capistran, the Court of Appeal reversed the Governor's decision denying parole based

3    on the commitment offense, and granted the writ of habeas corpus.  107 Cal. App. 4th at 1299.

4
5    Although the court acknowledged that "some evidence" about the commitment offense did

6    support the Governor's decision to deny parole, it held that his failure to give an individualized

7    determination based on all suitability factors violated Mr. Capistran's due process rights.  Id. at

8    1306.  Mr. Capistran was involved in a group fight in which the victim was killed.  Id. at.  Mr.

9    Capistran struck the first blow to the victim.  Id. at 1302.  However, the court found that

10   Capistran's involvement in the commitment offense was insufficient to determine that he would

11
12   pose an unreasonable risk to society today in light of his positive institutional record in his

13   eighteen years of incarceration.  Id. at 1306.

14       Governor Schwarzenegger's decision does not reflect an individualized consideration of

15   all factors relevant to parole suitability.  The Governor minimizes Mr. Batie's exemplary

16
17   institutional record and erroneously describes the nature of his conduct prior to imprisonment.

18   These factors demonstrate that the Governor did not afford Mr. Batie the individualized

19   consideration that due process requires.  Mr. Batie's record demonstrates that he meets all of the

20   applicable criteria set forth in section 2402 indicating suitability for parole.

21
22       The Governor's description of Mr. Batie's criminal history as violent is not supported by

23   any evidence.  (See Ex. P at 2-3.)  Mr. Batie has never committed a violent crime as a juvenile or

24   as an adult.  (Ex. P at 15-18.)

25       The Governor's evaluation that Mr. Batie's social history is unstable is not supported by

26   any evidence.  The Governor describes Mr. Batie's personal relationships as "tumultuous." (Ex.

27   P at 4.)  However, before his imprisonment he maintained a marriage for five years, which

28

17

1   resulted in the birth of his daughter. (See Ex. P at 19.)  Moreover, during the course of 22 years

2   of imprisonment, he has maintained contact with his daughter, his mother, and a childhood

3   friend. (Id. at 19-21.)

4
5        The Governor's determination that "Mr. Batie has not accepted responsibility for his

6   crime" and does not "accept responsibility for his crime or understand its magnitude and nature"

7   is not supported by any evidence. (Ex. P at 3.)  In fact, the BPT panel found that Mr. Batie "does

8   show signs of remorse" and that he "has indicated that he understands the nature and magnitude

9   of the offense, and accepts responsibility (indiscernible) behavior and has a (indiscernible)

10  change towards good citizenship." (See id. at 58.)  Mr. Batie's testimony during the parole

11  hearing supports the panel's conclusions.  Mr. Batie plainly stated, "I accept full responsibility."

12
13  (Id. at 15.)  He also showed significant insight into the magnitude of his offense when he

14  remarked, "…you have a girl…growing up without a father…I had something to do with

15  that…That's what hurts me, you know, thinking of what I've done…I have to live with that, you

16  know." (Id. at 38.)

17

18       The Governor's determination that Mr. Batie "continues to pose an unreasonable risk of

19  danger to society" is not supported by any evidence. (Id. at 3-4.)  In fact, the BPT panel stated,

20  unequivocally, "[t]he inmate, because of the maturation process, has a better understanding of

21  (indiscernible) has a reduced probability of recidivism." (Id. at 57.)  To support his

22
23  determination, the Governor concludes that "Mr. Batie has failed to adequately address his

24  substance abuse problem." (Id. at 4.)  However, Clinical Psychologist Joe Reed determined in

25  his August 20, 2001 psychological evaluation that Mr. Batie's cocaine and marijuana abuse are in

26  remission. (See Ex. Q (quoted in Ex. P at 58.))  In addition, Dr. Reed determined that Mr.

27  Batie's "violence potential is considered to be significantly below average relative to [CTF's]

28

1  Level II inmate population" and that "[i]f released to the community, his violence potential is

2  considered to be no more than that of the average citizen in the community." (Ex. Q at 5 (quoted

3  in Ex. P at 58-59.))

4

5      The Governor's determination that "Mr. Batie has inadequate parole plans" is not

6  supported by any evidence. (Ex. O at 4.) The Governor supports this determination with his

7  conclusion that "[h]is lack of even a specific job offer indicates that he has failed to make

8  realistic plans for parole." (Id.) However, title 15, section 2402(d) requires only that the inmate

9  has made realistic plans for release or has developed marketable skills that can be put to use upon

10  release. Mr. Batie, in fact, has at least one marketable skill. (See Ex. R.) In a letter, the Prison

11  Industry Authority Optical Lab Industrial Supervisor, James Anderson, stated that "with [his]

12  thirteen years experience in the field of optics, [he] believe[s] Inmate Baitie [sic] would be

13

14  employable on the street." (Id. (quoted in Ex. P at 29.)) In addition, Mr. Batie completed small

15  engine repair vocational training, and has worked as both a library porter and education

16  department clerk. (See Ex. P at 56.) Moreover, the BPT panel found Mr. Batie's job assistance

17  offer through the San Diego Workforce Partnership (See Ex. S) sufficient because "it's difficult

18

19  for somebody to offer you a job when you are doing time." (Ex. P at 57.)

20      Finally, the Governor has failed to give adequate consideration to Mr. Batie's institutional

21  activities. Mr. Batie has continuously adhered to the BPT panels' recommendations that he

22  upgrade educationally and vocationally. (See, e.g., Ex. at.) Mr. Batie completed a typing class,

23

24  math course, music class, ABE-III education course, and received his GED. (Ex. E at 3-4.) He

25  has completed small engine repair and machine shop courses (Id. at 4), and is employable as an

26  optical technician. (Ex. R.) While incarcerated, Mr. Batie has worked as a library porter and

27  assistant, and as an educational clerk. (Ex. at.) In addition, he has consistently participated in

28

1   self-help and therapy programming including, inmate band performance, CTF-N Music Program,

2   psychotherapy, Substance Abuse Therapy Program, completed the eight week self-help group

3   "Addictions," and Alcoholics and Narcotics Anonymous. (Ex. E at 4.) Moreover, Mr. Batie's

4
5   last disciplinary report was in 1994, preceded by a period of seven years with no incidents. (Ex.

6   P at 58.)

7       Thus, even assuming that the nature of Mr. Batie's offense constitutes some evidence of

8   unsuitability, the Governor's decision is arbitrary and capricious because it does not take into

9
    consideration the substantial evidence in the record that he meets each of the relevant suitability
10
11  factors set forth in Title 15.

12          iii.    Governor Schwarzenegger's Continued Reliance On
                    The Circumstances Of The Offense Runs Contrary
13                  To The Rehabilitative Goals Espoused By The
14                  Prison System And Therefore Violates Due Process.

15      A continued reliance by the Governor on an unchanging factor, such as the circumstances

16  of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals

17  espoused by the prison system and therefore constitutes a due process violation. In Ramirez, the

18
    Court of Appeal concluded "that the Board's reliance on the nature of the commitment offenses
19
20  to deny Ramirez parole for the seventh time, nine years after he first became eligible and 17 years

21  after he entered prison, reflects a determination that was arbitrary in the sense that the Board

22  failed to apply the controlling legal principle to the facts before it." 94 Cal. App. 4th at 571.

23  Similarly, in Biggs, the Ninth Circuit recently stated that "[d]enying a prisoner who has, over a

24
    period of time, continued to demonstrate exemplary behavior and evidence of rehabilitation
25
26  "simply because of the nature of [the prisoner's] offense and prior conduct would raise serious

27  questions involving his liberty interest in parole." 334 F.3d at 916. The Biggs court determined

28  that the petitioner's liberty interest had not yet been violated because this was his initial hearing

1   before the Board of Prison Terms. Id. The Court noted, however, that "[a] continued reliance in

2   the future on an unchanging factor, the circumstance of the offense and conduct prior to

3   imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could

4   result in a due process violation." Id. at 917.

5

6       Governor Schwarzenggers's continued reliance on the commitment offense and conduct

7   prior to imprisonment to deny Mr. Batie parole, many years after his minimum eligible parole

8   date and over 24 years after he entered prison, reflects a determination that is arbitrary and

9   capricious since Governor Schwarzenegger failed to apply the controlling legal principles to the

10  facts before him. The Governor's reversal of Mr. Batie's parole date was based primarily on his

11

12  commitment offense and conduct prior to imprisonment despite his exemplary behavior in prison

13  and the uncontroverted evidence of his rehabilitation. The overnor's continued reliance on these

14  unchanging factor runs contrary to the rehabilitative goals of the prison system and constitutes a

15  violation of due process under the California Constitution.

16

17  **II.    GOVERNOR SCHWARZENEGGER'S DECISION VIOLATES MR.
18          BATIE'S DUE PROCESS RIGHTS UNDER THE UNITED STATES
            CONSTITUTION.**

19      The United States Supreme Court has held that parole statutes utilizing a "shall/unless"

20  construction, such as California's, create an expectation of parole that is protected by due

21

22  process. Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 12 (1979);

23  accord Bd. of Pardons v. Allen, 482 U.S. 369, 377-81 (1987) (finding that a Montana statute

24  requiring release on parole when certain requisite findings are made creates a due process liberty

25  interest). Because the "structure and language" of section 3041(b) of the California Penal Code

26  is identical to the statute involved in Greenholtz, "the expectancy of release provided in this

27

28  statute is entitled to some measure of constitutional protection." Greenholtz, 442 U.S. at 12.

21

1    The Ninth Circuit has explicitly held that section 3041 provides California prisoners with

2    a federal right to due process at their parole consideration hearings. <u>Armstrong v. Davis</u>, 275

3    F.3d 849, 864 (9th Cir. 2001). The Ninth Circuit recently reiterated this holding based on

4

5    <u>Greenholtz</u>, stating explicitly that "California's parole scheme gives rise to a cognizable liberty

6    interest in release on parole." <u>McQuillion v. Duncan</u>, 306 F.3d 895, 902 (9th Cir. 2002).

7    Federal jurisprudence regarding the due process entitlements of inmates being considered

8    for parole from the federal penal system closely parallels California case law. Discretionary

9    parole board decisions regarding parole matters are reviewable in cases where the decisions

10   violate due process through arbitrary and capricious application of the law. <u>Benny v. U.S. Parole</u>

11   <u>Comm'n</u>, 295 F.3d 977, 985 (9th Cir. 2001); <u>see also</u> <u>Wallace v. Christensen</u>, 802 F.2d 1539,

12   1552 (9th Cir. 1986). The requirements of due process with regard to parole decisions require

13   that "some evidence" be utilized to support the findings of the parole board. <u>See</u> <u>Jancsek v.</u>

14   <u>Oregon Bd. of Parole</u>, 833 F.2d 1389, 1390 (9th Cir. 1987).

15

16   Governor Schwarzenegger violated the due process rights afforded to Mr. Batie by the

17   Fourteenth Amendment of the United States Constitution by reversing his parole suitability

18   finding without basing their decisions on any evidence. His decision to continues to deny him

19   parole, despite his exemplary institutional record and uncontroverted rehabilitation, also

20   constitutes a denial of his federal right to due process.

21

22

23   III.   THIS COURT SHOULD ORDER MR. BATIE'S RELEASE BECAUSE
            GOVERNOR SCHWARZENEGGER'S DECISION IS NOT SUPPORTED
24          BY ANY EVIDENCE.

25   If a court finds that there is "no evidence to support a decision other than the one reached

26   by the Board, "a remand to the Governor ... would amount to an idle act" and the inmate is

27   entitled to release. <u>Smith</u>, 114 Cal. App. 4th at 504 (ordering immediate release of petitioner

28

when no evidence existed to support the governor's decision); But c.f. Capistran, 107 Cal. App. 4th at 1307, 132 Cal. Rptr. 2d at 872 (ordering the governor to vacate his decision and issue a new one pursuant to his authority under Article V, section 8(b) of the California Constitution and section 3041.2 of the California Penal Code).

Because Governor Schwarzenegger's decision to reverse Mr. Batie's parole was not supported by any evidence, and his continued reliance on the commitment offense and conduct prior to imprisonment was arbitrary and capricious, this Court should order Mr. Batie's immediate release.

## IV.    CONCLUSION

Governor Schwarzenegger abused his authority in reversing the BPH's finding that Mr. Batie is suitable for parole. Pursuant to the release date set by the Board of Parole Hearings, Mr. Batie already should have been released from custody. There is no evidence that he would pose an unreasonable risk to society if released. In reversing his parole, the Governor violated Mr. Batie's constitutional rights, specifically, his right to due process under the California and U.S. Constitutions.

Petitioner respectfully asks this court to order that Mr. Batie be released immediately from prison and allowed to parole to San Diego, California.

DATED: May 16, 2006                     Respectfully,

                                        MICHAEL J. BRENNAN
                                        CARRIE L. HEMPEL
                                        USC POST-CONVICTION JUSTICE PROJECT


By:     _____
                                        MICHAEL J. BRENNAN
                                        Attorney for Petitioner

1

JOHN LEE BATIE

2

On the Brief:
Thy Bui

3

Certified Law Student Intern

4

5

6

7

8

9

10

11

·12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28